No. 23-3137

In the

# United States Court of Appeals
# for the District of Columbia Circuit

————————

UNITED STATES OF AMERICA,

*Appellee,*

v.

BRUNO JOSEPH CUA,

*Appellant.*

————————

**Appeal from the United States District Court
for the District of Columbia**

————————

## BRIEF OF APPELLANT BRUNO JOSEPH CUA

————————

William E. Zapf
KAISER PLLC
1099 14th Street, NW, 8th Fl. West
Washington, DC 20005
Phone: (202) 640-2850
Fax: (202) 280-1034
wzapf@kaiserlaw.com

*Attorney for Appellant*
BRUNO JOSEPH CUA

## CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES

### I.    PARTIES

The United States of America and Bruno Joseph Cua have appeared before the district court and this Court.

### II.    RULINGS UNDER REVIEW

The following rulings are at issue before this Court:

1.    The February 22, 2023 order of the district court holding that violating 18 U.S.C. § 111(a) does not require that the defendant have committed an assault (Moss, J.). *See* JA0068.

2.    The February 24, 2023 bench finding by the district court that Mr. Cua assaulted Officer G.L. (Moss, J.) and its adjudgment that he is guilty of violating section 111(a). *See* JA0238-51.

### III.    RELATED CASES

There are no related cases. This case has not previously been before this Court, nor are there any related cases currently pending before this Court or in any other court of which counsel is aware.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND
RELATED CASES ........................................................................................ i

   I.   Parties ........................................................................................ i

   II.  Rulings Under Review .............................................................. i

   III. Related Cases ............................................................................ i

TABLE OF CONTENTS ............................................................................ ii

TABLE OF AUTHORITIES ....................................................................... v

INTRODUCTION ...................................................................................... 2

STATEMEMENT OF JURISDICTION ..................................................... 4

ISSUES PRESENTED FOR REVIEW ....................................................... 4

STATEMENT OF THE CASE .................................................................... 4

   I.   THE INDICTMENT ................................................................. 5

   II.  PRETRIAL PROCEEDINGS ................................................... 6

     A.  The parties' partial stipulation of facts ................................. 6

     B.  The district court's first definition of "assault" ................... 8

     C.  The district court's determination that an assault is not required
under section 111(a) ........................................................... 9

   III. PARTIALLY STIPULATED BENCH TRIAL ........................ 10

     A.  Government's Exhibit 107 ..................................................... 11

     B.  Government's Exhibit 204 ..................................................... 14

     C.  Government's Exhibit 208 ..................................................... 16

D.  Defendant's Exhibit 1 ............................................................... 18

IV. THE DISTRICT COURT'S FINDINGS .................................. 20

V.  SENTENCING, JUDGMENT, AND NOTICE OF APPEAL .............. 24

SUMMARY OF THE ARGUMENT .................................................. 25

ARGUMENT ............................................................................ 26

I.   THE DISTRICT COURT ERRED BY DETERMINING THAT A
DEFENDANT MAY VIOLATE SECTION 111(A) WITHOUT
COMMITTING AN ASSAULT. ...................................................... 26

A.  Standard of review........................................................... 27

B.   The district court erred in evaluating the text of section 111(a)....... 28

C.   The structure of section 111(a)'s penalty provision supports Mr.
Cua's interpretation. ....................................................... 38

D.  The statutory and legislative history demonstrate that an assault is
required to violate section 111(a).................................... 39

E.   Additional persuasive case law supports Mr. Cua's proposed
interpretation. ................................................................. 47

F.   The rule of lenity would require a construction in Mr. Cua's favor
that would require an assault to be convicted of violating section
111(a)............................................................................. 57

II.  THE DISTRICT COURT ERRED IN ITS RELIANCE ON THE
ACTIONS OF OTHERS IN DETERMINING WHETHER MR. CUA'S
ACTIONS PLACED OFFICER G.L. IN REASONABLE APPREHENSION
OF IMMEDIATE BODILY HARM. ................................................ 58

III. THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO
SUPPORT A FINDING BEYOND A REASONABLE DOUBT THAT MR.
CUA ASSAULTED OFFICER G.L. ............................................... 62

CONCLUSION....................................................................... 66

CERTIFICATE OF COMPLIANCE ...................................................................... 1

CERTIFICATE OF SERVICE ............................................................................... 2

# TABLE OF AUTHORITIES

## **Cases**

*Begay v. United States*, 553 U.S. 137 (2008) ........................................................ 72

*CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878 (S.D. Ind. 2015) .............. 58

*Duncan v. Walker*, 533 U.S. 167 (2001) ................................................................ 32

*Eagle Pharms., Inc. v. Azar*, 952 F.3d 323 (D.C. Cir. 2020) ......................... 41, 42

*Fischer v. United States*, 144 S.Ct. 2176, 603 U.S. --- (2024) ......................... 1, 44

*Fischer v. United States*, 603 U.S. 480, 144 S.Ct. 2176 (2024) ...................... 43, 44

*Lamie v. U.S. Trustee*, 540 U.S. 526 (2004) ..................................................... 32, 36

McNally v. United States, 483 U.S. 350, 358-59 (1987) ................................... 59

*Moskal v. United States*, 498 U.S. 103 (1990) ..................................................... 58

*Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200 (D.C. Cir. 2013) ....... 42

*NLRB v. SW Gen., Inc.*, 580 U.S. 288 (2017) ................................................. 50, 51

*Ratzlaf v. United States*, 510 U.S. 135 (1994) ...................................................... 42

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) .................................................... 32

*Sierra Club v. E.P.A.*, 551 F.3d 1019 (D.C. Cir. 2008) ....................................... 42

*United Mine Workers of Am. 1974 Pension Plan v. Energy W. Mining Co.*, 39
    F.4th 730 (D.C. Cir. 2022) ............................................................................... 32

*United States v. Arrington*, 309 F.3d 40 (D.C. Cir. 2002) ................................... 34

*United States v. Batchelder*, 442 U.S. 114 (1979) ......................................... 40, 41

*United States v. Briley*, 770 F.3d 267 (4th Cir. 2014) .......................................... 35

*United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024) .......................................... 69

*United States v. Castellanos*, 731 F.2d 979 (D.C. Cir. 1984) ............................... 70

*United States v. Clark*, 184 F.3d 858 (D.C. Cir. 1999) ......................................... 70

*United States v. Davis*, 690 F.3d 127 (2d Cir. 2012) ............................................ 54

*United States v. Gagnon*, 553 F.3d 1021 (6th Cir. 2009).................... 55, 56, 57, 65

*United States v. Granderson*, 511 U.S. 39 (1994) .................................................. 65

*United States v. Griffin*, --- F.4th ---, 2024 WL 4536993 (D.C. Cir. Oct. 22, 2024) ....................................................................................................... 28

*United States v. Hathaway*, 318 F.3d 1001 (10th Cir. 2003) ....................... passim

*United States v. Heid*, 904 F.2d 69, 71 (D.C. Cir. 1990) ...................................... 34

*United States v. Johnson*, 979 F.3d 632 (9th Cir. 2020)....................................... 29

*United States v. Kendall*, 876 F.3d 1264 (10th Cir. 2017) ................................... 52

*United States v. Menasche*, 348 U.S. 528 (1955) .................................................. 32

*United States v. Olano*, 507 U.S. 725 (1993) ........................................................ 57

*United States v. Santos*, 553 U.S. 507 (2008) ....................................................... 66

*United States v. Stands Alone*, 11 F.4th 532 (7th Cir. 2021)....................... passim

*United States v. Vallery*, 437 F.3d 626 (7th Cir. 2006)...................... 62, 63, 64, 71

*United States v. Williams*, 602 F.3d 313 (5th Cir. 2010)......................... 55, 56, 57

*United States v. Wolfname*, 835 F.3d 1214 (10th Cir. 2016) ................. 51, 52, 53

*United States v. Woods*, 571 U.S. 31 (2013) ........................................................ 32

*United States v. Yates*, 304 F.3d 818 (8th Cir. 2002)) ............................. 46, 47, 48

*United States v. Yates*, 574 U.S. 528 (2015) ........................................................ 72

**Statutes**

18 U.S.C. § 111 ................................................................................... passim

vi

18 U.S.C. § 1114 .................................................................................... 30

18 U.S.C. § 1343 .................................................................................... 58

18 U.S.C. § 1365(h)(4) ........................................................................... 71

18 U.S.C. § 1512 ..................................................................... 1, 2, 11, 43

18 U.S.C. § 3231 ...................................................................................... 4

28 U.S.C. § 1291 ...................................................................................... 4

483 U.S. 350, 358-59 (1987) ................................................................. 59

Pub. L. 110-177, title II, § 208(b), Jan. 7, 2008, 121 Stat. 2538 ......................... 49

Pub. L. 117-59, § 3(1), Nov. 18, 2021, 135 Stat. 1469 ......................................... 29

Pub.L. 103-322, Title XXXII, § 170201(c)(4)-(6), 108 Stat. 2042 ....................... 48

## **Other Authorities**

153 Cong. Rec. S15789-90 (Dec. 17, 2007) ............................................. 47, 49, 55

Impede, Merriam-Webster, *available at* www.merriam-
webster.com/dictionary/impede .................................................................. 54

Interfere, Merriam-Webster, *available at* www.merriam-
webster.com/dictionary/impede .................................................................. 54

Intimidate, Merriam-Webster, *available at* www.merriam-
webster.com/dictionary/intimidate ............................................................. 54

Oppose, Merriam-Webster, *available at*
www.merriamwebster.com/dictionary/oppose ......................................... 54

Resist, Merriam-Webster, *available at* www.merriam-
webster.com/dictionary/resist .................................................................... 54

U.S.S.G. § 1B1.1 ...................................................................................... 9

**<u>Treatises</u>**

2 Subst. Crim. L. § 13.4 (3d ed.) ......................................................... 60

*State v. Casey's General Stores*, 587 N.W.2d 599, 601 (Iowa 1998) ................... 60

Wayne R. La Fave & Austin W. Scott, Jr., Criminal Law § 3.2(f), at 202...... 60

This is an appeal of a final judgment in a criminal prosecution in which Mr. Cua was convicted of violating of 18 U.S.C. § 111(a) by forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with a U.S. Capitol Police officer, while that officer was engaged in the performance of his official duties, and where Mr. Cua allegedly made physical contact with the victim of that assault or had the intent to commit another felony.

Mr. Cua also appeals his conviction for violating 18 U.S.C. § 1512(c)(2), based on his allegedly obstructing or impeding an official proceeding, which was alleged to be a joint session of Congress convened on January 6, 2021 to certify the vote count of the Electoral College for the 2020 presidential election. The government has informed undersigned counsel that it will not defend Mr. Cua's conviction for violating section 1512(c)(2), in view of the United States Supreme Court's decision in *Fischer v. United States*, 144 S.Ct. 2176, 603 U.S. --- (2024). Accordingly, this brief does not address Mr. Cua's section 1512(c)(2) conviction, except to request that it be vacated with instructions to the district court to dismiss it.

## INTRODUCTION

Mr. Cua has admitted to doing many regrettable things on January 6, 2021. As an 18-year-old, caught up in the furor following then-President Trump's speech encouraging his supporters to "fight," Mr. Cua has admitted to entering the Capitol without authorization, going into the gallery of the Senate Chamber, jumping down from the gallery onto the floor of the Chamber, and even sitting in then-Vice President Pence's chair. But what he did not do, and has not admitted to doing, is assault a police officer, as required by 18 U.S.C. § 111(a).

The government charged Mr. Cua with a felony violation of section 111(a), but what the government has not recognized, and which the district court also rejected, is that section 111(a)'s felony provision requires that the factfinder find beyond a reasonable doubt that the defendant assaulted the government official involved. This assault requirement best serves the statutory text and structure, is confirmed by the legislative history, and is supported by decisions from multiple circuits. Indeed, the legislative history not only supports Mr. Cua's interpretation—it shows that Congress intended to codify a decision by the Tenth Circuit that held exactly what

2

Mr. Cua argued before the district court—that the government was required to prove beyond a reasonable doubt that Mr. Cua assaulted Officer G.L.

Alternatively, the district court found after a bench trial that Mr. Cua had in fact assaulted Officer G.L., thereby satisfying the statute even under Mr. Cua's interpretation.[1] The district court erred in making this finding, however, by inappropriately considering the actions of others in finding that Mr. Cua's actions placed Officer G.L. in "reasonable apprehension of immediate bodily harm, as required to constitute an assault. Moreover, with or without considering such actions by others, the evidence presented at trial was insufficient to find that Mr. Cua assaulted Officer G.L.

Because section 111(a) requires a finding beyond a reasonable doubt that a defendant assaulted the government official, because the district court erred in finding that Mr. Cua assaulted Officer G.L., and because government presented insufficient evidence that Mr. Cua assaulted Officer

---

[1] Mr. Cua stipulated prior to the bench trial that, should the district court determine that an assault is not required to convict under section 111(a), the evidence was sufficient to convict him, while preserving his ability to appeal that conviction.

G.L., the Court must reverse the district court and vacate Mr. Cua's

conviction under Count Three of the second superseding indictment.

## STATEMEMENT OF JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231.

This Court has jurisdiction under 28 U.S.C. § 1291. The district court

entered a final judgment on August 4, 2023. JA0093-99. Mr. Cua timely

appealed on August 22, 2023. JA0104-5.

## ISSUES PRESENTED FOR REVIEW

1.      Whether the district court erred by determining that a violation

of section 111(a) does not require a finding beyond a reasonable doubt that

the defendant assaulted the government official involved in the offense.

2.      Whether the district court erred in its reliance upon the actions

of others in finding that Mr. Cua assaulted Officer G.L.

3.      Whether the district court's verdict finding Mr. Cua guilty of

violating section 111(a) is supported by substantial evidence.

## STATEMENT OF THE CASE

This case stems from Mr. Cua's actions at the United States Capitol

on January 6, 2021. Mr. Cua was convicted of felony violations of sections

111(a) and 1512(c)(2) after a partially stipulated bench trial. The sole issue

not stipulated, which was tried by the parties at a bench trial, was whether

Mr. Cua had assaulted Officer G.L. The district court found he had.

## I.    THE INDICTMENT

Mr. Cua was indicted on February 10, 2021. *See* JA0029. The

indictment charged Mr. Cua with twelve counts in relation to his alleged

actions inside the U.S. Capitol building on January 6, 2021, including Count

Three charging him with violating section 111(a)(1). On April 9, 2021, the

government filed a superseding indictment, which contains the operative

language for Count Three, charging Mr. Cua with violating section

111(a)(1) by,

> forcibly assault[ing], resist[ing], oppos[ing], imped[ing],
> intimidate[ing], and interfer[ing] with, an officer and employee
> of the United States, and of any branch of the United States
> Government (including any member of the uniformed services),
> that is, G.L., an officer from the United States Capitol Police
> Department, while such person was engaged in and on account
> of the performance of official duties and where the acts in
> violation of this section involve physical contact with the victim
> and the intent to commit another felony.

*See* JA0037. On December 1, 2021, the government filed a second

superseding indictment but did not alter Count Three. *See* JA0043.

## II.    PRETRIAL PROCEEDINGS

### A.    The parties' partial stipulation of facts

Mr. Cua waived his right to a jury trial. JA0047. On February 13, 2023, Mr. Cua signed the final version of a Statement of Facts for Stipulated Trial ("Stipulation").[2] *See* JA0048-66. By the Stipulation, Mr. Cua agreed that, in the event that the Court were to (1) deny Mr. Cua's motion to dismiss Count Three for violating section 111(a), and (2) hold that a violation of section 111(a) does not require the government to prove beyond a reasonable doubt that Mr. Cua assaulted Officer G.L., and without waiving any appeal regarding such arguments, that if the court were to find the existence of the facts in the Stipulation beyond a reasonable doubt, this would be sufficient to establish each and every element of section 111(a).[3] In other words, Mr. Cua continued to contend

---

[2] Mr. Cua and the government had previously agreed to a Statement of Facts for Stipulated Trial but later amended it on February 13, 2023, which became the operative stipulation for the case.

[3] This Stipulation specifically was agreed upon "without waiving defendant's objections to the Court's rulings and appeals or other challenges to those rulings." JA0065.

after the Stipulation (a) that an assault was required to convict him of

violating section 111(a) and (b) that he did not assault Officer G.L.

The parties also stipulated to the definition of "assault": "The term

'assault' means any intentional attempt or threat to inflict injury upon

someone else, when coupled with an apparent present ability to do so, that

places another in reasonable apprehension of immediate bodily harm."

JA0050.

With respect to Count Three, the Stipulation states in relevant part:

At approximately 2:41 p.m., the defendant reached the end of the
hallway and turned left onto the southeast hallway outside the
Senate Gallery. At this time, on-duty USCP officers were
attempting to lock the doors to the Senate Gallery to prevent the
Senate Gallery and Senate Floor from being breached by the
mob. The defendant walked down the hallway with other
members of the crowd to a set of doors where two USCP officers,
including Officer G.L., were attempting to lock the doors. As the
crowd approached the doors, and unauthorized person called
out "Don't you dare lock another door!" Another unauthorized
person called out "don't let them lock the doors." The
unauthorized person then grabbed one of the doors that the
officers were attempting to lock. The defendant saw this
exchange and moved toward the door where the officers were
located. At approximately 2:42 p.m., the defendant moved
toward the doors and interacted with Officer G.L., and the
defendant's interaction with G.L. involved physical contact with
G.L. After several seconds of the interaction, Office G.L. and the

7

other USCP officers retreated away from the doors without locking them in order to protect themselves.

JA0055. The Stipulation further noted that Exhibits 107, 204, and 208, which are videos, depict these events. *See* JA0055-56. *See also* JA0254, JA0255 & JA0256.

### B.    The district court's first definition of "assault"

In a Minute Order entered on February 10, 2023,[4] the trial court agreed with the parties' stipulated definition of "assault" as used in section 111(a) to mean "any intentional attempt or threat to inflict injury upon someone else, when coupled with an apparent present ability to do so."[5] JA0021-2. The district court, however, disagreed with the parties on the meaning of "injury" within that definition of "assault." Mr. Cua had agreed with the government's proposal that the district court use the definition of the term "bodily injury" from the U.S. Sentencing Guidelines

_____

[4] The Minute Order is dated after the operative stipulation due to revisions the parties made after signing the first stipulation lodged with chambers but not made part of the record. *See supra* note 2.

[5] As discussed below, the court later revised its definition because it had omitted the last portion of the parties' stipulated definition: that the actions of the defendant must place the alleged assault victim in "reasonable apprehension of immediate bodily harm." JA0050.

of "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily is sought." *See* U.S.S.G. § 1B1.1, n. 1. The court, however, disagreed and directed the parties to address the issue further at an upcoming hearing.

### C.    The district court's determination that an assault is not required under section 111(a)

Prior to signing the Stipulation, Mr. Cua had filed a motion for leave to file a motion to dismiss Count Three, for which the district court granted leave on January 17, 2023, by Minute Order. JA0020. The proposed motion sought dismissal of Count Three on grounds that the second superseding indictment failed to sufficiently charge a violation of section 111(a)(1) and place Mr. Cua on sufficient notice because it did not allege that Mr. Cua assaulted Officer G.L. *as a required element* of the offense, rather than as an *alternative means* for violating the statute (along with resisting, opposing, impeding, intimidating, and interfering with Officer G.L.). In the alternative, Mr. Cua sought a pretrial ruling that a violation of section 111(a) requires that the defendant have assaulted the officer in question.

9

On January 30, 2023, the district court held a hearing on Mr. Cua's motion to dismiss or for a pretrial ruling. *See* JA0106-39.

On February 22, 2023, the district court issued a Memorandum Opinion and Order ("Order") denying Mr. Cua's motion to dismiss Count Three and held that "an assault is not an indispensable element of a § 111(a) charge." JA0068. The district court stated in its Order that it would consider the factual argument as to whether Mr. Cua committed an assault at a scheduled bench trial. *Id.*

## III.  PARTIALLY STIPULATED BENCH TRIAL

The district court held a partially stipulated bench trial on two of the charges: Counts 2 and 3, for violations of sections 1512(c)(2) and 111(a), respectively. On February 13, 2023, the district court held the stipulated portion of the trial. JA0145-77. This included reviewing with Mr. Cua the charges against him, the statutory sentencing provisions, and the Stipulation Mr. Cua had signed, including a colloquy to establish that Mr. Cua had knowingly and voluntarily entered into the Stipulation. *Id.*

On February 24, 2023, the district court held a bench trial on the factual issue of whether Mr. Cua assaulted Officer G.L. *See* JA0203-51.[6] There, the parties presented exhibits and arguments concerning those exhibits to which they had stipulated. Among other exhibits, the government presented the three videos mentioned in the Stipulation depicting the interactions with Officer G.L., Exhibits GX107, GX204, and GX208. *See* JA0254, JA0255 & JA0256. Mr. Cua's counsel presented argument regarding the same three videos and presented a fourth video entered into evidence, Defendant's Exhibit 1, showing another angle of the relevant interactions with Officer G.L. *See* JA0253.

## A.    Government's Exhibit 107

GX107 is a closed circuit, fixed perspective video with no sound taken from one of the Capitol's interior surveillance cameras. *See* JA0254. Approximately 1 minute, 42 seconds long, it shows the hallway outside

---

[6] Prior to hearing argument and evidence on the question of whether Mr. Cua committed an assault, the district court heard further argument regarding the definition of "injury" within the definition of assault. *See* JA0178-202.

entrance doors to the gallery of the Senate Chamber, which are on the right side of the hallway from the camera's perspective.

Mr. Cua enters the frame at approximately the 35-second mark, highlighted within an orange ring superimposed by the government, with his back to the camera and moving away from the camera. Mr. Cua is holding his phone in his left hand, apparently videorecording the scene. Mr. Cua walks down the left side of the hallway and then turns to his right at approximately the 42-second mark to cross the hall toward the gallery doors to film through an open set of doors. At that point in the video, Mr. Cua is quite far from the camera in the upper left-hand side of the video frame.

At approximately the 48-second mark, a man in an orange sweatshirt (later identified as Ronald Sandlin) can be seen grabbing the handle to one of the doors near where Mr. Cua is standing as two men, later identified as plainclothes Capitol Police officers, begin to close the doors. At approximately the 50-second mark, Mr. Cua can be seen attempting to go behind one of the officers, later identified as Officer G.L., and toward the doors, as the two officers turn to confront Mr. Sandlin and others.

12

Mr. Cua's body then moves quickly back from the door, apparently pushed by Officer G.L., as shown more clearly in other videos, discussed below.



*Mr. Cua shown in red hat at the approximately 50-second mark of GX107 going behind Officer G.L.*

At approximately the 53-second mark, Mr. Cua's head can be seen going back toward the door again and then moving rapidly backward again, but his contact with Officer G.L. is nearly completely blocked by Mr. Sandlin's body.



*Mr. Cua shown in red hat at the approximately 53-second mark of GX107*

Mr. Cua then moves back toward the door as Officer G.L. and the other Capitol Police officer move away from the door and down the hall toward the camera. Mr. Cua then enters the gallery doors at approximately the 1:03 mark.

### B.    Government's Exhibit 204

GX204 is a video with sound taken by Mr. Sandlin, which is approximately 5 minutes, 48 seconds long. *See* JA0255. The relevant portion showing the interactions with Officer G.L. does not begin until approximately the 4:34 mark, with Mr. Cua coming into the left side of the frame at the 4:37 mark and continuing down the hall with his back to the

camera before the camera turns away from him at approximately 4:40. At approximately 4:43, someone can be heard saying, "Don't you lock another door!" as the camera turns to the same two Capitol Police officers shown in GX107 as they prepare to close the same set of doors discussed above. At 4:46, someone says, "Grab the door!" At 4:48, Mr. Cua can be seen coming into the frame from the left, as he attempts to go behind Officer G.L., but the camera turns away suddenly. At approximately 4:52,[7] Mr. Cua can be seen again as his body is near or against Officer G.L., but it does not show Mr. Cua moving toward Officer G.L. The shot goes completely blurry as Mr. Cua's body again moves quickly away from Officer G.L., as if shoved by the officer, only showing for a brief moment Mr. Cua holding his right arm up extended in front of his face in a protective stance. Mr. Cua's head appears again at approximately 4:55, but any further interactions with Officer G.L. are not visible.

---

[7] At approximately the same time, the sound of the video stops, which the government has represented is present in the original video.

15



*Mr. Cua shown in red hat at the approximately 4:52 mark of GX204*

## C.    Government's Exhibit 208

GX208 is another video with sound taken by another defendant in a different case, Josiah Colt, which is approximately 10 minutes, 25 seconds long. *See* JA0256. The relevant scene involving interactions with Officer G.L. begins at approximately the 5:07 mark. At approximately the 5:11 mark, the person again can be heard saying, "Don't you lock another door!" Mr. Cua is highlighted with an orange ring around him at approximately the 5:13 mark, just before Mr. Sandlin reaches to grab the

16

door handle of one of the doors. Mr. Cua then disappears behind other people before part of his head reappears at approximately the 5:18 mark, when Officer G.L. can also be seen with his arms extended out in Mr. Cua's direction. It is during that blocked portion that Mr. Cua first attempted to go behind Officer G.L. and is pushed away. Then, at 5:19, as Officer G.L. is leaning forward interacting with other persons, Mr. Cua again attempts to go behind the officer, and again is caught and pushed back. The physical contact between Mr. Cua and Officer G.L., however, is completely blocked by another person.

*Mr. Cua shown in red hat approximately 5:20 mark of GX204 as he attempts to go behind Officer G.L. a second time*

### D.    Defendant's Exhibit 1

Finally, DX1 is another closed circuit video from another Capitol surveillance camera without sound. *See* JA0253. The video is approximately 45 seconds long. It is the only video filmed from the other end of the hallway looking toward the scene with the gallery doors to the left. Although the relevant interaction is relatively far from the camera, it begins at approximately the 5-second mark, with Mr. Cua first visible in his red

hat at approximately the 7-second mark. He is seen close to the doors at the top of the frame at the 10-second mark with a bright white spot on his left side created by his phone screen.



*Mr. Cua shown in red hat with bright white spot from his phone screen to his left at approximately the 10-second mark with Officer G.L. to the left*

He can then be seen attempting to go behind the officer beginning at approximately the 14-second mark.



*Mr. Cua shown in red hat at approximately the 14-second mark as he attempts to go behind Officer G.L. to his right*

The rest of the interaction with Officer G.L. is obscured by others standing behind Mr. Cua.

## IV.  THE DISTRICT COURT'S FINDINGS

Following the presentation of evidence and argument on February 24, 2023, the district court found Mr. Cua guilty of violating section 111(a). JA0250-1. In doing so, the district court found that Mr. Cua had assaulted Officer G.L. JA0239-48. The court specifically rejected the government's

contention that Mr. Cua had assaulted Officer G.L. during the first interaction, recognizing that Mr. Cua was attempting to go behind the officer, but found that the second interaction constituted assault. JA0241-2**.**

In making its finding of assault, the district court stated it was applying the definition of assault to which the parties had stipulated: "The term 'assault' means any intentional attempt or threat to inflict injury upon someone else, when coupled with an apparent present ability to do so, that places another in reasonable apprehension of immediate bodily harm." *See* JA0076. *See also* JA0050.[8] For purposes of the definition of assault, the Court also adopted the defense's proposed definition of "injury" to mean "bodily injury," as defined in 18 U.S.C. § 1365(h)(4), "which defines 'bodily injury' to mean a cut, abrasion, bruise, burn, or disfigurement, physical pain, illness, impairment of a function of a bodily member, organ, or mental facility, or any other injury to the body, no matter how temporary." JA0241.

---

[8] This adopted definition differs from the definition adopted in the Court's February 10, 2023 Minute Order because it adds the phrase "that places another in reasonable apprehension of immediate bodily harm." Compare JA0050 with JA0021.

In finding that Mr. Cua's actions caused Officer G.L. to be placed in reasonable apprehension of immediate bodily harm, the court stated that "the context in which this happened matters."

> The officer was under attack in a brutal fashion. As I said before, I think the actions of others were even more troubling of what was going on, but Mr. Cua joined in on that and he saw what was going on there.

> He heard the yelling and he heard the pleas to keep the officers from closing the door. He physically engaged with Officer G.L., with a baton in his hand when he did so, and in a manner in which Officer G.L. would quite reasonably have regarded Mr. Cua's interaction with him as more serious because, at the same moment, Officer G.L. was battling back others who were trying to brutally assault him. And Mr. Cua joined in that assault or attack on Officer G.L. at that point.

JA0242-3. The court added: "And Mr. Cua may not have been the leader of that attack, he may not have been the one who posed the gravest threat at that moment, but he joined in that attack on the officers, and Officer G.L. in particular, at that time." JA0243.

The court found:

> there's evidence that Mr. Cua's conduct, along with that of the others, caused that reasonable apprehension because they actually fled from doing something that I know and very much believe that they intended to do …. They only retreated because of the physical assault that Mr. Sandlin, Mr. DeGrave, Mr. Cua, and others engaged in at that point in time.

*Id.* at 67.

In terms of intent to inflict injury, the court found that "various text messages and social media are relevant to that," but he did not "give as much weight as the government might. I certainly think there was hyperbole involved in those messages…" JA00244. The court then reviewed some of the text messages and social media posts, concluding,

> I don't doubt that those are hyperbolic statements by somebody who was immature, who was an 18-year-old at the time, but they're certainly also consistent with somebody who came respecting people in the building, who came without any intention or belief that he would engage in violence and simply found himself in a situation that he did his best to avoid or where it was only because the officer engaged with him when he was trying to get by without touching the officer or not hurting the officer in any way.

JA0245.

The Court then found that,

> when I look at the facts as a whole, I don't think that Mr. Cua – and this is not sentencing today, but I don't think he was as culpable in that interaction as Mr. Sandlin or Mr. DeGrave, but I do think that he committed an assault, even within a definition with excludes offensive touching and requires some type of attempt or threat to inflict bodily injury or where one acts in a manner that places another in a reasonable apprehension of immediate bodily injury.

23

> I do think that Mr. Cua intentionally threatened to and did – intentionally threaten to place – to injury Officer G.L., and that his actions placed Officer G.L. in reasonable apprehension of bodily harm.

JA0246.

The trial court also, on alternative grounds, concluded that Mr. Cua forcibly interfered with or impeded law enforcement officers who were engaged in the performance of their official duties with the intent to commit another felony, citing the other felonies set forth in the Stipulation, including section 1752(a)(1) and section 1512(c). JA0247.

The district court then adjudged Mr. Cua guilty of Counts 2 and 3 of the second superseding indictment. JA0250-1.

## V.    SENTENCING, JUDGMENT, AND NOTICE OF APPEAL

On July 26, 2023, the district court sentenced Mr. Cua to one year and one day in prison, followed by thirty-six months of supervised release, on each of Counts Two and Three, to be served concurrently. JA0026. The district court entered its judgment on August 4, 2023. JA0093-9.

On August 22, 2023, Mr. Cua filed a notice of appeal from the final judgment. JA0104-5.

24

## SUMMARY OF THE ARGUMENT

The district court erred by interpreting section 111(a) to not require a finding that the defendant assaulted the government official in question. Although the district court cited various canons of construction to support its textual analysis, that analysis fares worse than Mr. Cua's proposed interpretation at serving those canons. Mr. Cua's interpretation is better supported by the text and structure of the statute, as well as its legislative history, which demonstrates unequivocally that Congress intended to codify a circuit court decision holding that section 111(a) requires a finding of assault, just as Mr. Cua argues. Moreover, while a circuit split exists regarding this issue, the decisions of the circuits following Mr. Cua's interpretation more faithfully serve the text and congressional intent.

The trial court also erred by relying too heavily on the actions of other persons who were violently assaulting Officer G.L. at the time of Mr. Cua's interactions with him to support its finding of assault. Even if the court need not block out the context in which Mr. Cua acted, the court goes too far in holding Mr. Cua responsible for the fact that the others

assaulting Officer G.L. placed him in reasonable apprehension of immediate bodily harm.

Finally, the portion of the trial court's verdict based on a finding of assault is unsupported by substantial evidence. Upon *de novo* review of the video evidence of Mr. Cua's interactions with Officer G.L., it is apparent to any reasonable factfinder that Mr. Cua was attempting to go behind Officer G.L. when he made physical contact with him, and in any event had no intention to injure the officer, and certainly did not have such intent beyond a reasonable doubt.

## ARGUMENT

### I.    THE DISTRICT COURT ERRED BY DETERMINING THAT A DEFENDANT MAY VIOLATE SECTION 111(A) WITHOUT COMMITTING AN ASSAULT.

The district erred in its pretrial ruling that a defendant may be convicted under section 111(a) without a finding beyond a reasonable doubt that the defendant assaulted the relevant official. *See* JA0067-92. In so doing, the district court held that, while an assault is necessary to commit a misdemeanor violation of section 111(a) and to commit a felony based on physical contact with the victim, an assault is not necessary to commit a

26

felony violation of section 111(a) based on intent to commit another felony. *Id.* at JA0082. While the district court is correct that both a misdemeanor and a felony based on physical contact require an assault, it erred by finding that a felony violation of section 111(a) based on intent to commit another felony does not require such an assault.

To convict a defendant under section 111(a), the government must prove beyond a reasonable doubt that the defendant assaulted the designated government official in all circumstances. Moreover, to convict a defendant of a felony under section 111(a), the government must also prove beyond a reasonable doubt that such an assault involved physical contact or an intent to commit another felony.

## A.    Standard of review

This Court reviews de novo a district court's interpretation of a statute. *United States v. Griffin*, --- F.4th ---, 2024 WL 4536993, at *6 (D.C. Cir. Oct. 22, 2024). *See also United States v. Johnson*, 979 F.3d 632, 636 (9th Cir. 2020) ("In a bench trial, a district court's legal error regarding the elements of the offense is reviewed in the same way we review an erroneous jury instruction regarding the elements of the offense.").

27

**B.    The district court erred in evaluating the text of section 111(a).**

Starting with the statute's text, as of January 6, 2021,[9] the date of the events at issue here, Section 111 provided:

(a) In General.—Whoever—

(1) Forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title[10] while engaged in or on account of the performance of official duties; or

(2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's terms of service,

shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

---

[9] The current version of section 111 contains an additional provision, at subsection (c), added after January 6, 2021, that is in any event irrelevant to this case: "(c) Extraterritorial Jurisdiction.—There is extraterritorial jurisdiction over the conduct prohibited by this section." This provision was added to the statute on November 18, 2021, after the events at issue here. *See* Pub. L. 117-59, § 3(1), Nov. 18, 2021, 135 Stat. 1469.

[10] 18 U.S.C. § 1114 addresses the killing or attempted killing of "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services)[.]"

(b) Enhanced Penalty.---Whoever, in the commission of any acts described in section (a), uses a deadly weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 111 (2020).

The district court held that "an assault is not an indispensable element of a § 111(a) charge." JA0068. While recognizing that "many—and perhaps most--§ 111(a) cases will turn on proof of an assault[,]" the district court held that "it is also possible to obtain a § 111(a) conviction by proving beyond a reasonable doubt that the defendant 'forcibly' impeded or interfered with (or resisted, opposed, or intimidated) a designated federal official in the performance of her official duties and did so with 'the intent to commit another felony.'" *Id.*

To reach this holding, the district court divided section 111(a) into three offenses: "(1) acts in violation of the statute that 'constitute only simple assault' (the 'simple-assault provision'); (2) acts in violation of the statute the (sic) 'involve physical contact with the victim of that assault' (the 'physical-contact provision'); and (3) acts in violation of the statute that

29

'involve … the intent to commit another felony' (the 'other-felony provision')." JA0076. It then agreed with Mr. Cua that the first two offenses—the misdemeanor simple-assault provision and the physical-contact provision—require the finding of an assault beyond a reasonable doubt but disagreed with Mr. Cua regarding the third offense, holding that a defendant may violate section 111(a) without committing an assault so long as he forcibly resists, opposes, impedes, intimidates, or interferes with the designated official with the intent to commit another felony. *Id.*

Focusing first on the text of section 111(a), the district court emphasized three canons of statutory interpretation: (1) an obligation "to give effect, if possible, to every clause and word of a statute," JA0074 (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955), and citing *United Mine Workers of Am. 1974 Pension Plan v. Energy W. Mining Co.*, 39 F.4th 730, 738 (D.C. Cir. 2022)) (same); (2) avoiding reading "absent word[s] into the statute," JA0080 (quoting *Lamie v. U.S. Trustee*, 540 U.S. 526, 538 (2004); and (3) a presumption that words and phrases listed in the disjunctive should be given "separate meaning," JA0076, JA0080 (quoting *United States v. Woods*,

571 U.S. 31, 45-46 (2013) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)).

The district court's use of these canons, however, fails to clarify the meaning of the statute or to reconcile the alleged ambiguities the district court claimed to resolve by using them. Indeed, the district court's resulting interpretation violates the very canons it relies upon.

For example, a felony under section 111(a) requires that "such acts involve physical contact with the victim of that assault or the intent to commit another felony." In other words, *both* "involve[ment of] physical contact" and "involve[ment of] the intent to commit another felony" prongs modify the phrase "such acts." "Such acts" must mean the same thing for both felony prongs. Yet, one of the bases for the court's conclusion that the other-felony provision does not require an assault was its determination that "such acts" references the original list of six verbs. JA0077. Yet, the court also concluded that the physical-contact felony requires an assault, despite that provision also involving "such acts." Thus, while emphasizing the need to give meaning to all six verbs in section 111(a) and the supposed predominant meaning of the disjunctive "or" in

31

concluding that the other-felony provision does not require an assault, the district court ignored those canons in finding that the physical-contact felony requires an assault. After all, under the district court's reasoning, "such acts" refers to the six verbs listed in the disjunctive, so requiring an assault would fail to give five of those words meaning under the district court's reasoning.

Similarly, the simple-assault provision, which the district court found *does require an assault*, uses the plural term "acts in violation of this section." Similar to "such acts," the court ignores its professed obligation to give meaning to all words of the statute or the supposed meaning of the disjunctive in the statute when it requires an assault for a misdemeanor, thereby rendering superfluous the five other verbs under the district court's reasoning.[11]

_____

[11] The district court also cites *United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002), highlighting that decision's conclusion that the term "forcibly" modifies "each of the prohibited acts specified in the second element," and *United States v. Heid*, 904 F.2d 69, 71 (D.C. Cir. 1990) (trial court explained to the jury that "any of the several possible acts listed in section 111 … could form the basis for a conviction). JA0074-75. Neither decision, however, involved the question presented here. Moreover, such reasoning again is

The district court cites *United States v. Briley*, 770 F.3d 267, 273 (4th Cir. 2014), to support its conclusion that "such acts" refers to any of the six enumerated verbs. JA0078. But *Briley* also illustrates the internal inconsistency of the district court's analysis. Unlike the district court, *Briley* held that "either a misdemeanor or a 'physical contact' felony may arise from any of 'the acts in violation of this section'—namely, forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with current officers such as these." 770 F.3d at 273. In sum, *Briley* undermines the district court's interpretation by holding that none of the three offenses require an assault. The district court here, of course, held the opposite—that a misdemeanor offense under section 111(a) may not arise from any of the acts "in violation of this section," but rather may only arise from an assault. JA0076.

The district court next attempts to shore up its reasoning by noting that section 111(b) uses the term "any acts described in subsection (a)."

---

inconsistent with the court's reading of "such acts" and "acts in violation of this section" for purposes of the simple-assault and physical-contact provisions.

JA0079. This reference, however, cuts against the district court's interpretation. Rather than use "such acts," as is used in the felony provisions of section 111(a), section 111(b) uses different language, specifically referencing *any of the acts* in subsection (a). The felony penalty provision in subsection (a), in contrast, does not use the more specific term "any of the acts." Thus, as a purely textual matter, where Congress intended to identify all six of the acts, it knew how to do so and did so in section 111(b).

The district court similarly overstates the canon to avoid reading absent words into a statute. JA0078 (reasoning that, "[i]f Congress had intended what Cua suggests, it would have said, 'where such an assault' involves the intent to commit another felony"). The case cited by the court for this canon, *Lamie v. U.S. Trustee*, 540 U.S. 526 (2004), explains that this guideline applies when there is a "plain, nonabsurd meaning [of the statute] in view." *Id.* at 528. The problem with following this canon strictly here is that the court's interpretation of the felony provision in section 111(a) is anything but plain. It is internally inconsistent, applying canons of construction when it suits its outcome but ignoring them otherwise.

34

Moreover, the district court's application of this canon is internally inconsistent. The court reasoned that Congress could "have said, 'where such an assault' involves the intent to commit another felony" if it wanted to require an assault for the other felony. JA0078. But the same reasoning would apply to the physical-contact provision, which the court determined does require an assault. Congress could have said "where such an assault involves physical contact with the victim of that assault." It did not. Instead, it used the phrase "such acts" for both the physical-contact and other-felony provisions.

Mr. Cua argued in the court below that the term "such acts" in the felony provision refers back to the acts that otherwise constitute a misdemeanor—a misdemeanor assault plus one of the two felony aggravating factors. The district court attempts to discredit this argument reasoning that "the simple-assault provision does not list any 'acts,' making it linguistically challenging to read the subsequent reference to 'such acts' in the felony provision as a shorthand for the 'acts' identified in the simple-assault provision." JA0078. But that is not what Mr. Cua argued or is arguing.

35

The language of the misdemeanor provision is critical to understand the phrase "such acts" in the felony provision. The misdemeanor provision covers actions by the defendant that constitute "*only* simple assault." § 111(a) (emphasis added). The inclusion of the word "only" links the misdemeanor provision to the felony provision and divides it in contradistinction—the use of the term "only" in the misdemeanor provision indicates that a felony requires *more than* simple assault—misdemeanor plus something. Yet, the district court's construction of the other-felony provision would permit conviction of a defendant for a felony that does not include all elements needed for a misdemeanor. This reads the word "only" out of the statute for purposes of the other-felony offense.

Additional textual support for requiring an assault for a felony conviction under section 111(a) comes from the term describing the additional requirements for a felony as "involv[ing] physical contact with the victim of that assault or the intent to commit another felony." § 111(a). Again, the use of the term "that assault" references back to the misdemeanor provision and confirms that both the misdemeanor and felony provisions require an assault. *See United States v. Chapman*, 528 F.3d

36

1215, 1221 (9th Cir. 2008) (the "use [of] the word 'assault' in the description of both misdemeanors **and** felonies" in the 2008 amendment strongly suggests that an assault is required for a section 111(a) conviction (emphasis in original)). Moreover, as discussed below, the introduction of physical contact and intent to commit another felony were borrowed by courts from section 113, an assault statute, when interpreting a prior version of section 111(a) before Congress codified those statements.

    In sum, the district court rejects Mr. Cua's argument because it does not follow the three canons of construction, but it then construes the statute to render the phrases "acts in violation of this statute" and "such acts" (at least for the physical-contract provision) extraneous in the same way it criticizes Mr. Cua.[12]

---

[12] The district court also cites the different language used in section 111(a)(2)—limiting the offense against "formerly designated persons" to forcible assault and forcible intimidation—to contrast the supposed importance of all six verbs in section 111(a)(1). JA0075. This only highlights further the district court's inconsistent use of the canons of construction.

37

**C.     The structure of section 111(a)'s penalty provision supports Mr. Cua's interpretation.**

The statute's structure also confirms that a felony 111(a) conviction requires an assault. "[F]or [a] statute to be constitutional, it must draw a line between that conduct which constitutes a misdemeanor offense and that which constitutes a felony." *Chapman*, 528 F.3d at 1220 (holding that section 111(a) requires an assault and citing *United States v. Batchelder*, 442 U.S. 114, 123 (1979) ("[V]ague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute.")). "Moreover, this line must be sufficiently clear that a reasonable person would be put on notice of the potential criminality of his conduct." *Id.* (citing *Batchelder*, 442 U.S. at 123). The district court's interpretation fails to draw a sufficiently clear line between a misdemeanor and felony. It upsets the structure of a lesser-included misdemeanor offense by eliminating the relevance of the word "only" with respect to an other-felony offense. Rather than provide for felonies that include the same conduct as the misdemeanor plus aggravating factors, the district court's interpretation provides for an

entirely different felony that a defendant may commit without meeting the elements of a misdemeanor, a feature one would have expected Congress to be clearer about if it had meant that to be.

### D. The statutory and legislative history demonstrate that an assault is required to violate section 111(a).

The district court found that, "because the statutory text is unambiguous, the Court 'need not resort to legislative history to decipher what the Congress intended[.]'" JA0085 (quoting *Eagle Pharms., Inc. v. Azar*, 952 F.3d 323, 339 (D.C. Cir. 2020). It also stated that it was unnecessary to "'to cloud a statutory text that is clear'" with such history. *Id.* (quoting *Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 212 (D.C. Cir. 2013) (quoting *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994))). It then went on to find that, "even if the Court were to consider the legislative history of § 111, the Court's conclusion would remain unchanged." *Id.*

To start, the district court understates the role of statutory history. The very case the court cites, *Eagle Pharmaceuticals*, states that "our precedent has instructed that we 'exhaust the traditional tools of statutory construction, including examining the statute's legislative history to shed

new light on congressional intent, notwithstanding statutory language that appears superficially clear." 952 F.3d at 338-39 (quoting *Sierra Club v. E.P.A.*, 551 F.3d 1019, 1027 (D.C. Cir. 2008)). Indeed, the Court need look no further than the Supreme Court's recent decision in another case involving a January 6 defendant, *Fischer v. United States*, 603 U.S. 480 (2024). In interpreting 18 U.S.C. § 1512(c)(2),[13] the Court in *Fischer* said "[i]t makes sense to read" the statute "in light of the history of the provision." *Id.* at 491. It said so without any discussion, much less a conclusion, that the statutory text was ambiguous. It then walked through how "the Enron accounting scandal revealed a loophole [in section 1512]" that allowed persons to destroy documents, and "to plug this loophole, Congress

_____

[13] Section 1512(c) provides:

Whoever corruptly—

(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding: or

(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

enacted Section 1512(c)." *Id* at 492. It then used that legislative history to narrow an otherwise seemingly broad provision, reasoning: "It would be peculiar to conclude that in closing the Enron gap, Congress actually hid away … a catchall provision that reaches far beyond the document shredding and similar scenarios that prompted the legislation in the first place." *Id.*

Like *Fischer*, it is precisely the legislative history of section 111(a), and the case law that drove that history, that illuminates and explains the anomalies discussed above, and demonstrates that the intent of Congress was that section 111(a) require, at minimum, an assault to convict, whether for a misdemeanor or either type of felony.[14] In short, the prior precedent and legislative history clears up any mystery as to why the statute is phrased the way it is—why, for example, it refers to assaults in the

---

[14] As even the district court recognized at the motions hearing, "if you scratch your head and try and figure out what Congress was really doing here, I think, even though they didn't say it, they must have meant assault – which is not at all a frivolous argument, but it's one that's in some tension with the predominant view of statutory interpretation these days." JA0120. *See also* JA137 ("[I]t does seem that the defense has a pretty good argument that the language came from Hathaway.")

misdemeanor and felony provisions despite the inclusion of five other

verbs in section 111(a)(1).

Prior to amendments to section 111 in 2008 that created the statute

applicable to Mr. Cua, the felony penalty provision simply applied "in all

other cases," as emphasized below:

> (a) In General.—Whoever—
>
> > (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties ….
>
> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and ***in all other cases***, be fined under this title or imprisoned not more than 8 years, or both.

18 U.S.C. § 111 (2007) (emphasis added).

Under this pre-2008 statute, the Tenth Circuit in *United States v.*

*Hathaway*, 318 F.3d 1001, 1007-08 (10th Cir. 2003), held that section 111(a)

proscribed two offenses: "simple assault" and "'all other cases' assault." It

differentiated these two types of assault by first defining "assault" based

on the common law as a "willful attempt to inflict injury upon the person

of another, or by a threat to inflict injury upon the person of another which,

when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." *Id.* at 1008. It then joined the Eighth Circuit in looking to the federal assault provisions in section 113 to differentiate the two classes of assaults in section 111(a).[15] *Id.* (citing *United States v. Yates*, 304 F.3d 818, 823 (8th Cir. 2002)). As *Hathaway* observed, prior to the introduction of "simple assault" into section 111 in 1994, "Congress used the phrase 'simple assault' in only one other criminal statute, 18 U.S.C. § 113 (assaults within the maritime and territorial jurisdiction)." *Id.*

Based on section 113's structure, *Hathaway* held that "simple assault" in section 111 meant "assault which does not involve physical contact, a deadly or dangerous weapon, bodily injury, or the intent to commit murder or any felony other than those referred to in § 113(a)(2)." *Id.* (citing *United States v. Yates*, 304 F.3d 818, 822 (8th Cir. 2002)). The Eighth Circuit in *Yates*, in turn, identified this definition of simple assault, by excluding various exacerbating factors listed in section 113, which sets forth different

---

[15] The text of section 113 at the time of *Hathaway* is included in an Addendum to this brief.

types of assault, including simple assault, "based upon particular characteristics or results." *Yates*, 304 F.3d at 822. As *Yates* recognized, when Congress amended section 111(a) in 1994, including by adding the misdemeanor simple-assault provision, it also amended section 113(a) to redesignate and differentiate the various categories of assault, including simple assault. *Id.* (citing Sept. 13, 1994, Pub.L. 103-322, Title XXXII, § 170201(c)(4)-(6), 108 Stat. 2042). Although "simple assault" was not (and is not presently) affirmatively defined in section 113, *Yates* and *Hathaway* used the other, more serious categories of assault to narrow down simple assault to assault not involving physical contact, a deadly or dangerous weapon, bodily injury, or intent to commit murder or another felony.[16] Given that section 111(b) covered assaults involving a deadly or dangerous weapon or bodily injury, *Hathaway* defined "all other cases" assault as "any assault that involves actual physical contact or the intent to commit murder or any felony other than those referred to in §113(a)(2) but does not involve

---

[16] As the district court recognized at the hearing, sections 111 and 113 originally were included in the same legislation and asked why they should not be read in *pari materia*. JA0135.

a deadly or dangerous weapon or bodily injury." *Hathaway*, 318 F.3d at 1008-09.

Then, approximately five years after *Hathaway*, in the 2008 amendment that created the version of section 111(a) applicable here, Congress revised subsection (a) to replace "in all other cases" with the same specific aggravating factors identified by *Hathaway*: "where such acts involve physical contact with the victim of that assault or the intent to commit another felony." Pub. L. 110-177, title II, § 208(b), Jan. 7, 2008, 121 Stat. 2538. In this manner, the 2008 amendment effectively codified *Hathaway's* interpretation by specifying in further detail the types of assault that made up the "all other cases" assault provision, exactly as the Tenth Circuit had defined the phrase, and exactly as reflected in section 113.

This was not coincidence. This codification of *Hathaway* was confirmed in floor remarks by Senator John Kyl of Arizona, who explained that the 2008 amendment,

> clarifies an assault offense that was created by Congress in 1994. The offense establishes penalties for simple assault, assault with bodily injury [in section 111(b)], and for assault in "all other cases." As one might imagine, the meaning of assault in "all other cases" has been the subject of confusion and judicial

debate. The offense has also been the subject of constant vagueness challenges, and although those legal challenges have been rejected, the offense is rather vague. Section 208 takes the opportunity to correct this legislative sin, ***codifying what I believe is the most thoughtful explanation of what this language means, the 10th Circuit's decision in United States v. Hathaway, 318 F.3d 1001, 1008-09, 10th Cir. 2003***.

153 Cong. Rec. S15789-90 (Dec. 17, 2007) (emphasis added).[17]

The district court attempts to downplay the relevance of the statement, noting that "'floor statements by individual legislators'—here, a member who was not even a co-sponsor of the legislation—'rank among the least illuminating forms of legislative history.'"[18] JA0086 (quoting *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 307 (2017)). This is not a case, though, where a congressman may have had a personal agenda to "spin" legislation—he is citing a specific court case, the holding of which matches the new statutory language precisely. Moreover, unlike *NLRB*, there is no contradictory legislative history. *See* 580 U.S. at 307.

---

[17] Although the district court rejected the significance of Senator Kyl's statement in its written opinion, it recognized it as "a strong point" for Mr. Cua's position at the motions hearing. *See* JA0117.

46

The Tenth Circuit later confirmed unequivocally that a violation of section 111(a)(1), as amended in 2008, "necessarily involves—at a minimum—simple assault." *United States v. Wolfname*, 835 F.3d 1214, 1218 (10th Cir. 2016).

Thus, to the extent that imperfections in the text under the canons of construction, those may be attributed to the fact that Congress inserted into a preexisting statute language taken directly from a case decision that had held that section 111(a) requires an assault. Whether *Hathaway* was correct or not at the time, Congress undoubtedly chose to clarify the statute by codifying the Tenth Circuit's decision.

### E. Additional persuasive case law supports Mr. Cua's proposed interpretation.

This interpretation is confirmed by other persuasive case law. Most recently, as mentioned, the Tenth Circuit in *Wolfname* held that "the government must prove assault when it alleges a defendant violated § 111(a)(1) by resisting, opposing, impeding, intimidating, or interfering with—rather than assaulting—an officer." 835 F.3d at 1218. In so holding, *Wolfname* relied on *Hathaway* and Congress's codification of that decision.

47

*Wolfname* recognized that *Hathaway* held that the phrase "all other cases" means cases involving an "assault that involves actual physical contact or the intent to commit [certain felonies] but does not involve a deadly or dangerous weapon or bodily injury." *Id.* at 1218 (quoting *Hathaway*, 318 F.3d at 1008-09. *See also United States v. Kendall*, 876 F.3d 1264, 1270 (10th Cir. 2017) ("Although one can violate § 111 in a number of ways—by assaulting, resisting, opposing, impeding, intimidating, or interfering with a designated official—every conviction under § 111 requires an assault.").

The government in *Wolfname* had argued that *Hathaway* was inapplicable because Congress had amended section 111 in the interim in 2008, as discussed above. The court rejected this argument, finding that "the 2008 amendment didn't controvert our holding in *Hathaway*; instead, it effectively codified it." 835 F.3d at 1220. As *Wolfname* explained, "*Hathaway* appears not only to have survived the 2008 amendment to § 111(a), but perhaps to have inspired it. *Id.* at 1223 (citing 153 Cong. Rec. S15789-01 (daily ed. Dec. 17, 2007) (statement of Sen. Kyl)). *See also Chapman*, 528 F.3d at 1219 (recognizing that the 2008 amendment adopted the approach of *Hathaway*). The Ninth Circuit has agreed with the Tenth Circuit's approach.

48

*See Chapman*, 528 F.3d at 1221 (holding that convictions under section 111 "require at least some form of assault").

The only circuit decision the district court cites in its favor is *United States v. Davis*, 690 F.3d 127 (2d Cir. 2012). JA0083-4. In *Davis*, the Second Circuit held that a misdemeanor under section 111(a) requires an assault. 690 F.3d at 137. In an effort to fend off criticism from other courts that such an interpretation renders the other five verbs superfluous, *Davis* notes, in dicta, that "the five non-assault acts would appear to be criminally prohibited by the felony clause 'where such acts involve … the intent to commit another felony.'" *Id.* at 136. As already reviewed, however, the misdemeanor clause cover "acts" (plural) "in violation of this statute," referring back to the six acts in subsection 111(a), so despite this reference, this interpretation renders five of those verbs superfluous for purposes of the misdemeanor offense. Thus, either option creates an issue with the text, elevating the need to consider clear legislative history here.

Notwithstanding the text and structure of the statute, some circuit courts have disagreed that a conviction under section 111 requires an assault (and disagreed with the district court's position that a misdemeanor

and physical-contact felony require an assault). *See United States v. Stands Alone*, 11 F.4th 532 (7th Cir. 2021); *United States v. Briley*, 770 F.3d 267, 272 (4th Cir. 2014); *United States v. Williams*, 602 F.3d 313, 318 (5th Cir. 2010); *United States v. Gagnon*, 553 F.3d 1021 (6th Cir. 2009). None of these cases is persuasive. And notably, none of them cites Senator Kyl's remarks confirming that Congress intended to codify *Hathaway* by the 2008 amendment. Indeed, *Gagnon* was implicitly superseded by statute because it interpreted the phrase "all other cases" under the old law, and explicitly rejected *Hathaway*, which itself was then codified by the 2008 amendment. *Gagnon*, 553 F.3d at 1022.

*Williams*, in turn, relies almost exclusively on *Gagnon*. 602 F.3d at 318 ("We adopt the Sixth Circuit rule and hold that a misdemeanor conviction under § 111(a)(1) does not require underlying assaultive conduct."). *Williams* also attempts to distinguish *Chapman* by suggesting that the 2008 amendment addressed an ambiguity *Chapman* had identified. Specifically, Williams reviewed: "To hold that non-assaultive conduct was proscribed by the statute would lead to absurd results, the Ninth Circuit [in *Chapman*] suggested, because 'in cases of mere resistance, it is not at all clear that

50

resistance with physical contact is any more culpable than resistance without such contact, especially when … the physical contact is initiated by the arresting officer....'" *Williams*, 602 F.3d at 317 (quoting *Chapman*, 528 F.3d at 1221). *Williams* reasoned that "Congress addressed the ambiguity identified by the Ninth Circuit by explicitly drawing the misdemeanor/felony line at physical contact, but it declined the opportunity to delete the other forms of conduct proscribed by the statute or to otherwise clarify that § 111(a)(1) convictions require an underlying assault." *Id.* To the contrary, the 2008 amendment codified *Hathaway*, which held that both the misdemeanor and felony required assaultive conduct. Indeed, if it did not, the absurd result would be even more absurd because assaultive resistance would be needed for a misdemeanor but not a felony.

These cases argue that requiring an assault for a conviction under section 111(a) would render superfluous the verbs "resists, opposes, impedes, intimidates, and interferes." *See, e.g., Stands Alone*, 11 F.4th at 535; *Briley*, 770 F.3d at 273-74; *Williams*, 602 F.3d at 317 (discussing *Gagnon*); *Gagnon*, 553 F.3d at 1026. The use of the disjunctive "or" between words, however, does not require each of them to have a unique and non-

51

overlapping meaning. *See, e.g., United States v. Olano*, 507 U.S. 725, 732 (1993) (reading "error or defect" to mean "error"); *Moskal v. United States*, 498 U.S. 103, 120-21 (1990) (Scalia, J., dissenting) (the principle of giving each word some effect if possible "should [not] be applied to the obvious instances of iteration to which lawyers, alas, are particularly addicted—such as 'give, grant, bargain, sell, and convey,' 'aver and affirm,' 'rest, residue, and remainder,' or 'right, title, and interest'"). *See also CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878, 908 n.26 (S.D. Ind. 2015) (applying Justice Scalia's reasoning in *Moskal* to the phrase "engaged or participated"). Indeed, the fraud statutes in Chapter 63 of Title 18 are structured in exactly this way. The wire fraud statute criminalizes "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises...." 18 U.S.C. § 1343 (emphasis added). Yet, the Supreme Court in *McNally v. United States* explained that the second phrase after "or" in the wire fraud statute was simply intended to make the scope of the first phrase "unmistakable." 483 U.S. 350, 358-59 (1987).

52

Section 111(a) involves precisely this type of iterative list for which the canon to avoid superfluous language "if possible" does not apply. For example, were the Court required to interpret "impede," the definition would render the term "interfere" superfluous because the terms are synonyms.[19] Similarly, any definition of "opposes" would encompass "resists," rendering the latter extraneous, for one cannot resist something without opposing it.[20] Intimidation is encompassed within assault as intimidate means "to make timid or fearful."[21] Finally, it is difficult to imagine an assault on an officer engaged in official duties that would not

---

[19] "Impede" means "to interfere with or slow the progress of." Impede, Merriam-Webster, *available at* www.merriam-webster.com/dictionary/impede. The relevant meaning of "interfere" is "to interpose in a way that hinders or impedes: come into collision or be in opposition." Interfere, Merriam-Webster, *available at* www.merriam-webster.com/dictionary/impede.

[20] "Oppose" means "to place over against something so as to provide resistance, counterbalance, or contrast." Oppose, Merriam-Webster, *available at* www.merriamwebster.com/dictionary/oppose. "Resist" means "to exert force in opposition." Resist, Merriam-Webster, *available at* www.merriam-webster.com/dictionary/resist.

[21] Intimidate, Merriam-Webster, *available at* www.merriam-webster.com/dictionary/intimidate.

also involve impeding, interfering with, and opposing the officer, which would render the term "assault" superfluous.

*Briley* also gets the legislative history wrong.[22] As *Briley* notes, "Congress enumerated these six verbs in the disjunctive. Why would Congress, in the same subsection, then swiftly render five of these verbs extraneous or defunct?" 770 F.3d at 274. This question reveals an incorrect understanding of the sequence in which the parts of the statute were enacted. As discussed above, the penalty provisions applicable to this case were amended in 2008, well after the original enactment enumerated the acts in subsection (a)(1). If anything, the latter enacted provision should be read to clarify or correct the previously enacted statute. Indeed, that is exactly what Senator Kyl explained the amendment was meant to do. 153 Cong. Rec. S15789-90 (Dec. 17, 2007).

---

[22] *Briley* also indicated that its holding may be limited to its facts. Rather than disagree with the Second Circuit in *Davis*, *see supra*, it explained that *Davis* "involved primarily passive resistance" to the officers, "compared with Briley's active, forcible actions against the Park Police." *Id.* at 275 ("Given the statute's crucial adverb—"forcibly"—the factual distinctions are significant. Notably, *Briley* did not address the prior decisions in *Vallery* (discussed *infra*), *Chapman*, and *Hathaway* in the Seventh, Ninth, and Tenth Circuits, respectively.

The most recent circuit court decision, *Stands Alone*, is inapposite and unconvincing. *Stands Alone* addressed a defendant convicted of violating section 111(b), not 111(a). 11 F.4th at 535. Subsection (b) does not contain the same delineation between a misdemeanor and a felony based on different types of assault. Rather, section 111(b) applies to "[w]hoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon … or inflicts bodily injury." Indeed, the Seventh Circuit decided another case before its decision in *Stands Alone* that addressed section 111(a) directly and held that the "the simple assault provision of § 111(a) applies to all violations of § 111(a), not merely to 'assaults.'" *United States v. Vallery*, 437 F.3d 626, 633 (7th Cir. 2006). Importantly, *Stands Alone* did not overrule *Vallery* and instead found that it had "limited applicability" because it did not address "whether assault is an essential element of every § 111 offense nor implicated an interpretation of subsection (b), as here." *Stands Alone*, 111 F.4th at 536 (emphasis added)

("*Vallery* does not answer the question here."). Thus, *Vallery* remains good law in the Seventh Circuit and supports Mr. Cua's interpretation.[23]

Indeed, while the Seventh Circuit thought *Vallery* did not answer the question in *Stands Alone* regarding section 111(b), it does answer the question here regarding section 111(a). In *Vallery*, decided in 2006, prior to the 2008 amendment codifying *Hathaway*, the issue was whether the indictment properly alleged a felony offense under section 111(a). 437 F.3d at 628. The indictment alleged in relevant part that the defendant "did knowingly and forcibly assault, resist, impede, and interfere with [a federal correctional officer] …." *Id.* at 629. It did not allege physical contact.[24] The court reasoned: "There is no dispute that 'simple assault' is a crime 'committed by either a willful attempt to inflict injury upon the person of

---

[23] *Stands Alone* also did not address the Second Circuit decision in *Davis* or the Ninth Circuit's decision in *Chapman*.

[24] The *Vallery* court repeatedly referred to the misdemeanor and felony crimes under section 111(a) as "assault." It described that section 111 covers "three separate offenses: first, misdemeanor simple assault under § 111(a); second 'all other cases' felony assault under § 111(a); and third, felony assault involving a deadly or dangerous weapon or resulting in bodily injury under § 111(b)." *Id.* at 630 (emphasis added). It then repeated that the two offenses in section 111(a) are "simple assault and felony 'all other cases' assault." *Id.*

another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm.'" *Id.* at 631. "Under any formulation of simple assault, the facts alleged by Vallery's indictment do not give rise to 'all other cases' assault unless the simple assault provision applies only to the word 'assaults' and not to 'resists, opposes, impedes, intimidates, or interferes with." *Id.* at 632. Further supporting *Vallery's* holding that at least simple assault is required for all actions under section 111(a), the court cited the fact that the misdemeanor penalty provision applies where the "acts in violation of this *section* constitute only simple assault," *id.* at 633 (emphasis in original), in other words all of the acts enumerated in section 111(a)(1). Against this precedent, *Stands Alone* is nonsensical unless it is limited to subsection 111(b).

**F.    The rule of lenity would require a construction in Mr. Cua's favor that would require an assault to be convicted of violating section 111(a).**

Even if section 111(a) could be interpreted as the district court did—i.e., that a person may be convicted under section 111(a) without the government proving an assault beyond a reasonable doubt—it is not

unambiguous. If the defense's proposed construction renders terms superfluous, the district court's interpretation wreaks havoc with other aspects of the text and the structural division between a misdemeanor simple assault and a felony. The circuit split provides additional support that the statute is at least ambiguous. Even *Williams* recognizes that the statute contains two ambiguities. 602 F.3d at 315-16 (distinguishing between misdemeanor and felony by use of "simple assault" and appearing to outlaw non-assault conduct against federal officers). Thus, the Court is required under the rule of lenity to resolve such ambiguities in Mr. Cua's favor by dismissing Count Three or applying a conclusion of law that requires an assault to be convicted under section 111(a). *United States v. Granderson*, 511 U.S. 39, 54 (1994); *United States v. Santos*, 553 U.S. 507, 515 (2008).

## II.   THE DISTRICT COURT ERRED IN ITS RELIANCE ON THE ACTIONS OF OTHERS IN DETERMINING WHETHER MR. CUA'S ACTIONS PLACED OFFICER G.L. IN REASONABLE APPREHENSION OF IMMEDIATE BODILY HARM.

"It is a general principle of criminal law that one is not criminally liable for how someone else acts, unless of course he directs or encourages

58

or aids the other so to act."[25] Wayne R. La Fave & Austin W. Scott, Jr., Criminal Law § 3.2(f), at 202. Although the doctrine of vicarious liability is not unusual in the context of civil lawsuits, it is contrary to the "basic premise of criminal justice that crime requires personal fault." 2 Subst. Crim. L. § 13.4 (3d ed.). *See also State v. Casey's General Stores*, 587 N.W.2d 599, 601 (Iowa 1998).

In Mr. Cua's case, the district court considered the actions of others to an improper extent, converting what it admitted was otherwise non-assaultive actions by Mr. Cua into a felony, and specifically to satisfy the element that Mr. Cua's actions placed Officer G.L. in reasonable apprehension of immediate bodily harm:

> So there's evidence that Mr. Cua's conduct, along with that of the others, caused that reasonable apprehension [of immediate bodily harm] because they actually fled from doing something that I know and very much believe that they intended to do, and they were going to do everything in their capacity to protect the gallery to keep people from entering the Senate chamber.

---

[25] Notably, Count Three of the second superseding indictment does not charge Mr. Cua with aiding and abetting others in violating section 111(a) under 18 U.S.C. § 2. JA0037.

59

They only retreated because of the physical assault that Mr. Sandlin, Mr. DeGrave, Mr. Cua, and others engaged in at that point in time.

JA0243-4.

Granted, the court stated its recognition that "Mr. Cua is only responsible for his actions," JA0218, but it then went on to recognize that Mr. Cua's actions themselves did *not* place Officer G.L. in fear of immediate bodily harm, as it voiced the theoretical mindset of the alleged victim:

> You know, he shoved me, that bothered me, but do I think that I actually am going to suffer some bodily injury? *No, I'm not going to.*
>
> Surround that person with ten people doing exactly the same thing, and the person says, yes, I'm frightened to death. And, in fact, that's a lot of what was going on that day at the Capitol where there were thousands and thousands of people overwhelming the police in ways in which, you know, I don't think there's any doubt that they were rightfully terrified by what was going on.

JA0218-9 (emphasis added).

Thus, the court concluded that Mr. Cua's actions did not, in fact, place Officer G.L. in reasonable apprehension of immediate bodily harm. The court even went so far as to imply "collective guilt" on the part of

60

"thousands and thousands of people" who were at the Capitol that day.

That type of vicarious liability simply is not permissible under the

American criminal law system, barring a charge and finding of conspiracy

or aiding and abetting, neither of which apply to Mr. Cua.

> The court reasoned further:

> I'm also persuaded the context in which this happened matters.
> The officer was under attack in a brutal fashion. As I said before,
> I think the actions of others were even more troubling of what
> was going on, but Mr. Cua joined in on that and he saw what
> was going on there.

> He heard the yelling and he heard the pleas to keep the officers
> from closing the door. He physically engaged with Officer G.L.,
> with a baton in his hand when he did so, and in a manner in
> which Officer G.L. would quite reasonably have regarding
> Mr. Cua's interaction with him as more serious because, at the
> same moment, Officer G.L. was battling back others who were
> trying to brutally assault him. And Mr. Cua joined in that assault
> or attack on Officer G.L. at that point.

JA0242-3. Here again, the court is relying upon "the actions of others [that]

were even more troubling" than Mr. Cua's actions when it had previously

indicated an officer would not have had a reasonable apprehension of

immediate bodily harm based on Mr. Cua's actions alone. When a group of

people is brutally attacking an officer and a person makes otherwise non-

assaultive contact with the officer as he tries to go behind him, the actions

61

of the others engaging in brutal attack cannot be attributed to Mr. Cua to make him guilty of assault.

## III. THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT A FINDING BEYOND A REASONABLE DOUBT THAT MR. CUA ASSAULTED OFFICER G.L.

Challenges to sufficiency of the evidence are reviewed de novo by this Court. *United States v. Brock*, 94 F.4th 39, 46(D.C. Cir. 2024). "The governing standard for reviewing the sufficiency of the evidence in non-jury cases is the same as that applied in jury cases: The conviction must be reversed when the evidence is such that a reasonable mind could not find guilt beyond a reasonable doubt." *United States v. Castellanos*, 731 F.2d 979, 984 (D.C. Cir. 1984).

In this case, a factfinder could not reasonably find Mr. Cua guilty of an assault beyond a reasonable doubt, given the uncontradicted video evidence that members of this Court can review themselves de novo. There are no credibility determinations to be made or conflicting evidence to be weighed, and, therefore, no deference to the district court's determination is deserved as it might otherwise be. *Compare United States v. Clark*, 184 F.3d 858, 863 (D.C. Cir. 1999) (noting the need to "giv[e] full play to the right of

the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact"). Rather, the video evidence shows that Mr. Cua, in both interactions, was attempting to reach the doors behind the officer and not intending to injure him, as required for a finding of assault.

The district court adopted the parties' stipulated definition of assault: "any intentional attempt or threat to inflict injury upon someone else, when coupled with an apparent present ability to do so, that places another in reasonable apprehension of immediate bodily harm."[26] JA0217. It also adopted Mr. Cua's proposed definition of "injury" for purposes of defining "assault" from 18 U.S.C. § 1365(h)(4), meaning "a cut, abrasion, bruise, burn, or disfigurement, physical pain, illness, impairment of a function of a bodily member, organ, or mental faculty, or any other injury to the body, no matter how temporary." JA0241.

While the district court described the phrase "any other injury to the body, no matter how temporary" in section 1365(h)(4) as "capacious,"

---

[26] This or similar definitions have been adopted by other courts analyzing section 111. *See, e.g., Hathaway*, 318 F.3d at 1008 (defining "simple assault"); *Chapman*, 528 F.3d at 1219, 1220 (defining "assault"); *Vallery*, 437 F.3d at 631 (defining "simple assault").

JA0241, the Court must apply the principle of *ejusdem generis* to limit the meaning of that clause. "[W]here general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *United States v. Yates*, 574 U.S. 528, 545 (2015) (plurality) (internal quotation marks omitted). *See also Begay v. United States*, 553 U.S. 137, 142-43 (2008). Thus, the final clause must be limited to injuries similar to a cut, abrasion, burn, disfigurement, physical pain, illness, impairment of a bodily member, organ, or mental faculty. For example, it could be read to encompass visible swelling or temporary joint dislocation but could not be expanded to include offensive touching, for example, which would swallow the preceding list.

Applying these definitions, no reasonable factfinder could find beyond a reasonable doubt that Mr. Cua intended to injure Officer G.L. There are two interactions with Officer G.L. at issue. In the first one, it is clear that Mr. Cua was attempting to go behind the officer to either enter or open the doors. Mr. Cua is visible in Exhibit DX1 going completely behind Officer G.L. *See* JA0253 at 0:14. Exhibit GX107 similarly shows Mr. Cua

64

attempting to go behind Officer G.L. *See* JA0254 at 0:50. Indeed, the district court agreed and found that this first interaction did not constitute an assault. JA0241.

The second interaction is the one that the trial court found constituted an assault. The video evidence cited, and the only video evidence relevant to the determination, however, is a blurred and largely blocked interaction in which Mr. Cua goes toward the doors and the officer again (just as he did in the first interaction, which was not an assault), and the officer stops him again from getting to the doors. *See, e.g.*, JA0255 at 4:52. Their bodies meet and then separate, with Mr. Cua being pushed backward and extending his arm as he is pushed backward. Given this video evidence, and given the first interaction clearly showing Mr. Cua attempt to go behind and then be pushed *by the officer*, it is unreasonable to conclude that there is no reasonable doubt that Mr. Cua assaulted Officer G.L. At the very least, the video evidence of the second interaction is no more consistent with an assault than it is with Mr. Cua being stopped by the officer from getting to the door a second time. It is not an assault if the officer and a defendant make physical contact as the officer blocks a

defendant from getting past him where the defendant had no intent to injure the officer.

To the extent that the government will cite to Mr. Cua's social media messages and posts prior to coming to Washington, D.C., or immediately after, such generalized, hyperbolic statements cannot negate the video evidence showing a brief, physical interaction between Mr. Cua and a much larger U.S. Capitol Police officer that is consistent with the officer twice repelling Mr. Cua's efforts to obtain access to the doors a bystander had encouraged him to keep open and the lack of an intent by Mr. Cua to injure the officer.

## CONCLUSION

For the foregoing reasons, Mr. Cua respectfully requests that this Court reverse the district court's order interpreting section 111(a) to not require a finding that the defendant committed an assault beyond a reasonable doubt, vacate the judgment and sentence on all counts, and remand the case with instructions to dismiss Count Three. In addition, Mr. Cua respectfully requests that the Court vacate the judgment with respect to Mr. Cua's conviction for violating section 1512(c)(2) in view of

66

the government's statement that it will not defend that conviction and

remand the case with instruction to dismiss Count Two.

                                        Respectfully submitted,

DATED:  November 12, 2024      */s/ William E. Zapf*

                                        William E. Zapf (D.C. Bar No. 987213)
                                        KAISER PLLC
                                        1099 14th Street NW
                                        8th Floor West
                                        Washington, DC 20005
                                        Telephone: (202) 640-2850
                                        Fax: (202) 280-1034
                                        wzapf@kaiserlaw.com

                                        *Attorney for Appellant*
                                        BRUNO JOSEPH CUA

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, and in accordance with Circuit Rule 28(c), Fed. R. App. P. 32(a)(5), (a)(7)(B), and (f), the undersigned counsel certifies that the accompanying motion is printed in 14-point typeface, with serifs, and consists of no more than 13,000 words, including footnotes. According to the "Word Count" feature in Microsoft Word, the word-processing software program used to prepare the motion, it contains 12,715 words, excluding the cover page, table of contents, table of authorities, statement regarding oral argument, signature block, and certificates.

 /s/ *William E. Zapf*
William E. Zapf

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Participants in this case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

 /s/ *William E. Zapf*
William E. Zapf